HALL, Judge.
Plaintiff, James Tate, an unskilled laborer, brought this suit against the defendant, Lumbermen’s Mutual Casualty Co., compensation insurer of J. R. Quaid Inc. seeking workmen’s compensation at the rate of $35.00 per week for 400 weeks, alleging that he was totally and permanently disabled as the result of a back injury he suffered while unloading a truck in the course of his employment, tie also prayed for medical expenses and statutory damages and attorney’s fees.
The Trial Court found that plaintiff had a developmental defect in his back; that though plaintiff had suffered an injury in November 1961 he was able to return to his normal work within a short time; that the present suit was predicated on an accident occurring on July 22, 1963 while plaintiff was unloading a truck; that this injury did in fact disable plaintiff for a period of time but that plaintiff was recovered from the effects of said injury by October 1, 1963, and that there was no permanent change *88 in the condition of his hack as a result of the accident. Accordingly, judgment was entered in favor of plaintiff in the full sum of $350.00 representing 10 weeks disability at $35.00 per week. From this judgment plaintiff appeals.
The only question before this Court is whether plaintiff is entitled to compensation beyond October 1, 1963.
Plaintiff contends that the accident of July 22, 1963 aggravated a pre-existing spondylolysis and permanently and totally disabled him from performing heavy manual labor. Defendant maintains that plaintiff’s claim for any compensation beyond that awarded below is unfounded since he has been restored to his former condition without residual disability.
It is well settled of course that if a worker with a latent physical defect when hired has such defect activated and rendered symptomatic by an injury received during the employment the employer cannot avoid liability by establishing that the defect was present at the time of hiring. But the defect is compensable only to the extent it is aggravated by the injury.
The issue in this case is purely one of fact which the Trial Court resolved against plaintiff.
The record discloses that plaintiff had suffered a back injury in November 1961. He received medical treatment for three and a half weeks and then returned to his same work. He claimed that he reinjured his back on July 22, 1963.
His first visit to a doctor was on July 24, 1963 when he saw Dr. George Garzotta, a part-time physician and a practicing attorney. Dr. Garzotta’s examination disclosed moderate muscle spasm in the lumbar area. He diagnosed plaintiff’s condition as a lumbosacral sprain and gave him an injection of a muscle relaxant. On July 29 plaintiff returned to Dr. Garzotta who again noted the muscle spasm which seemed worse than on July 24. Another injection was given. On August 12 Dr. Garzotta found the muscle spasm had improved and only mild spasm was present. On August 19 Dr. Garzotta saw plaintiff again but made no notes on this visit. On October 1 Dr. Garzotta examined plaintiff and found no spasm or other symptom present, and found that he had fully recovered from what Dr. Garzotta had diagnosed as a lumbosacral sprain.
Meanwhile plaintiff had employed an attorney who sent him to see Dr. Raymond Kitziger, an orthopedic specialist, who examined him on August 26, 1963. Dr. Kit-ziger found no muscle spasm, no neurological deficit or radiation of pain, no-atrophy. In fact he found no cause for plaintiff’s complaint of pain. X-rays were made, and these disclosed a condition known as spondylolysis which Dr. Kitziger explained as a developmental defect of the spine not caused by trauma, which is often non-symptomatic, but which may be aggravated and rendered symptomatic by trauma. He pointed out, however, that an aggravation of the condition would produce objective symptoms, or at least consistent subjective complaints. Dr. Kitziger found that plaintiff’s subjective complaints were bizarre and totally inconsistent. For example,, motions which plaintiff claimed caused him great pain when asked to perform, caused' him no discomfort at all when performed' as part of a natural movement. In short Dr. Kitziger found that plaintiff was feigning his complaints although the doctor did' not use that term. Dr. Kitziger gave it as: his opinion that as of August 26 when he-examined him that plaintiff was able to perform heavy labor. He added however that no one with spondylolysis should engage in: strenuous manual labor because a person-with such a back defect is prone to injury.
Plaintiff’s attorney next sent him to Dr. S. J. Lococo, also an orthopedic specialist,, who examined plaintiff on September 24,, 1963. Dr. Lococo found no muscle spasm-but did find that plaintiff had no sensation below the waist. He stated that this was. inconsistent with a spondylolysis, and could *89 not account for plaintiff’s multitude of subjective complaints. He stated there was no organic basis for them. Like Dr. Kitziger he would not advise any one with a spondy-lolysis to do heavy work for fear of injury.
Drs. Garzotta, Kitziger and Lococo were all witnesses for plaintiff.
Defendant placed Dr. Irving Redler on the stand. Dr. Redler, an orthopedic specialist, examined plaintiff on January 20, 1964. He found no muscle spasm and no objective evidence of injury or disability, and found that plaintiff’s complaints of pain were inconsistent. Dr. Redler made x-ray studies and found the developmental condition. He thought that a very slight forward slippage of the vertebra was present and compared his x-ray studies with those made in November 1961 and those of Dr. Kitziger made in August 1963 and testified that it was his opinion that the spondy-lolysis (or spondylolisthesis) was the same in January 1964 as in August 1963 and also in November 1961. Dr. Redler agreed that plaintiff’s developmental back condition made him a poor candidate for heavy labor but he found no injury present and would permit plaintiff to return to work. Further, Dr. Redler testified that although strain can aggravate plaintiff’s condition in this particular case it had not caused any aggravation.
The evidence establishes to our full satisfaction that plaintiff’s congenital or developmental back condition is no worse than it was in November 1961 when he returned to work after the first accident. He continued to do his regular work until the accident of July 22, 1963. The injury of July 22 in no way aggravated, increased or changed plaintiff’s back condition. The extent of the injury which plaintiff suffered in this accident was a lumbosacral strain from which he had completely recovered by October 1, 1963. See Speed v. Kieckhefer Container Co., La.App., 134 So.2d 76; Hutchinson v. Holloway Gravel Company, La.App., 126 So.2d 59; Gardner v. Lane Wells Company, La.App., 117 So.2d 629; Broussard v. R. H. Gracey Drilling Company, 227 La. 882, 80 So.2d 850.
The only remaining point in the case is plaintiff’s claim for statutory penalties and attorney’s fees. Defendant denied the occurrence of the accident of July 22, 1963, also the record reveals a dispute over whether any notice of the accident was given. The Trial Judge found that there was “some doubt as to whether the accident of July 22 actually occurred.” Under these circumstances we cannot say that defendant’s refusal to pay compensation was arbitrary and capricious. Plaintiff’s claim for statutory penalties and attorney’s fees is therefore denied.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.